IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES V. OLIVER,                  :
                                    :
       Petitioner                   :
                                    :   CIVIL NO. 3:12-CV-1445
                                    :
       v.                           :   Hon. John E. Jones III
                                    :
                                    :
JAMES McGRADY, *et al.*,             :
                                    :
       Respondents                  :

## **MEMORANDUM**

October 22, 2012

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

Petitioner Charles V. Oliver ("Petitioner" or "Oliver"), an inmate presently confined at the State Correctional Institution Retreat ("SCI Retreat") in Hunlock Creek, Pennsylvania, initiated the above action *pro se* by filing a Petition for Writ of Habeas Corpus ("Petition") under the provisions of 28 U.S.C. § 2254. (Doc. 1.) He challenges his January 25, 1995 conviction of first degree murder and criminal conspiracy in the Court of Common Pleas of Lackawanna County, Pennsylvania.

In an Order dated August 8, 2012 issued by the Honorable James M. Munley, to

whom this case then was assigned[1], it was stated that, upon preliminary review of the Petition, under the provisions of 28 U.S.C. § 2254, *see* R. Governing § 2254 Cases, R. 4, it appeared that the Petition may be barred by the one-year statute of limitations set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), *see United States v. Bendolph*, 409 F.3d 155, 169 (3d Cir. 2005) (en banc) (holding that district courts may *sua sponte* raise AEDPA's one-year statute of limitations, provided that the petitioner is provided with notice and an opportunity to respond). (Doc. 6.) Therefore, service of the Petition on Respondents was directed, Respondents were directed to file an answer solely addressing the timeliness of the Petition, and any applicable statutory and/or equitable tolling of the AEDPA statute of limitations, and Petitioner was afforded the opportunity to file a reply. (*Id.*)

On August 15, 2012, Respondents filed a Response (Doc. 11) and supporting exhibits (Doc. 11-1). On September 4, 2012, Oliver filed a Reply (Doc. 15). Based upon our review of the parties' submissions, for the reasons set forth below, we conclude that we must dismiss the Petition as untimely.

---

[1] By Order dated August 21, 2012, Judge Munley granted Oliver's Motions requesting his recusal in accordance with the ruling of the United States Court of Appeals for the Third Circuit in *Clemmons v. Wolfe,* 377 F.3d 322 (3d Cir. 2004) (requiring that each federal district court judge in this circuit recuse himself or herself from participating in a § 2254 habeas corpus petition of a defendant raising any issue concerning the trial or conviction over which that judge presided in his or her former capacity as a state court judge). (Doc. 14.) On the same date, the case was reassigned to this Member of the Court.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

On January 25, 1995, a jury sitting in the Court of Common Pleas of Lackawanna County convicted Oliver of first degree murder and criminal conspiracy to commit the same based on evidence that he accepted $1,500 from a local drug dealer's assistant to kill Ned Tracy, who was indebted to the dealer.  (*See* Doc. 11-1 at 2-3, 12/14/11 Pa. Super. Ct. Mem. Op.[2])  Oliver's case was severed from the cases of the dealer and the assistant.  (*See id.* at 3.)  On January 26, 1995, the trial court sentenced Oliver to life imprisonment without the possibility of parole and to a consecutive sentence of five to ten years' imprisonment for criminal conspiracy.  (*See id.* at 4.)

Oliver filed a direct appeal from his judgment of sentence to the Pennsylvania Superior Court, and on April 3, 1996, the Superior Court affirmed his judgment of sentence.  (*See id.*)

On May 26, 2010, Oliver filed a Motion for Post-Conviction DNA Testing with the trial court under the provisions of 42 Pa. Cons. Stat. Ann. § 9543.1.  (*See id.*) By Order dated November 8, 2010, the trial court denied Oliver's motion on the basis that he could not present a *prima facie* case demonstrating that the DNA testing of the

---

[2]Throughout this Memorandum, the citations to page numbers of documents filed to the docket in this action are to the numbers generated by the CM/ECF System.

specific evidence would establish his actual innocence of the offenses for which he was convicted, as required by § 9543.1(c)(3)(ii)(A).  (*See* Doc. 11-1 at 9, 11/8/10 Trial Ct. Order.)  The trial court specifically concluded that, "[b]ecause there was other evidence of the defendant's guilt, including a confession, the presence of evidence of his codefendants' DNA but absence of evidence of his own DNA would not prove his innocence here."  (*See id.*)

Thereafter, Oliver appealed to the Pennsylvania Superior Court.  In its December 14, 2011 Memorandum Opinion affirming the trial court's denial of Oliver's Motion, the Superior Court observed that, in his Motion, Oliver asserted that he was actually innocent of the crimes for which he was convicted, and in support of his argument, pointed to the trial testimony provided by investigators that the victim was found holding a black hair in his hand and possibly had some "probative evidence under his nails" consistent with having defended himself.  (*See id.* at 4-5 (citing N.T. 1/18/95 at 127).)  The Superior Court noted that, according to the record, Oliver has blond hair.  (*Id.* at 5.)

The Superior Court affirmed the trial court's denial of Oliver's Motion, but did so on different grounds.  (*See id.* at 2-7, 12/14/11 Pa. Super. Ct. Op.)  The Court began its analysis by quoting § 9543.1, entitled Postconviction DNA testing, as follows:

> (1) An individual convicted of a criminal offense in a court of this Commonwealth and serving a term of imprisonment or awaiting

4

> execution because of a sentence of death may apply by making a written motion to the sentencing court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.
>
> (2) The evidence may have been discovered either prior to or after the applicant's conviction. The evidence shall be available for testing as of the date of the motion. *If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency.*

(*See id.* at 6 (quoting 42 Pa. Cons. Stat. Ann. § 9543.1(a)(1) and (2) (emphasis in original)).) The Court then referred to its decision in *Commonwealth v. Perry*, 959 A.2d 932, 938-39 (Pa. Super. 2008) in which it interpreted § 9543.1(a)(2) to ***automatically*** deny eligibility to a petitioner "[i]f the technology existed at the time of his trial, the verdict was rendered after January 1, 1995, and the court never refused funds for the testing." (*See id.* (citing *Perry*, 959 A.2d at 938-39 (quoting *Commonwealth v. Williams*, 899 A.2d 1060, 1063 (2006)).) Based upon its interpretation in *Perry*, the Court concluded that, where Oliver conceded that DNA testing existed at the time of his trial, that his trial commenced and verdict was rendered after January 1, 1995, and that the trial court never refused funds for DNA testing, he ***automatically*** was ineligible for relief under the DNA testing statute. (*See*

*id.* at 6-7.)  The Court acknowledged that Oliver "baldly suggests that the Commonwealth intentionally delayed the start date of his trial from late 1994 to early 1995 in order to come under the present incarnation of Section 9543.1(a)(2)", but concluded that he "failed to substantiate this claim with any meaningfully developed argument."  (*See id.* at 7.)  The Superior Court therefore based its decision affirming the trial court's denial of the Motion on his automatic ineligibility for relief pursuant to the mandatory language of § 9543.1(a)(2), rather than on the trial court's finding that Oliver could not establish a *prima facie* case to obtain DNA testing under § 9543.1(c)(3)(ii)(A).  (*See id.*)

On July 16, 2012, the Pennsylvania Supreme Court denied Oliver's Petition for Allowance of Appeal.  (*See* Doc. 1 at 1; Doc. 11, Response, at 2.)  Oliver filed the instant Petition on July 26, 2012.

## II.  DISCUSSION

The Court may "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  AEDPA requires, with a few exceptions that will be discussed below, that habeas corpus petitions filed under § 2254 be filed within one year from "the date on which the [petitioner's] judgment became final by the

6

conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).  Thus, we shall begin our analysis by considering the date on which Oliver's judgment of sentence became final.

Preliminarily, we note that, as pointed out by Respondents, the provisions of § 2244(d) did not become effective until April 24, 1996, the date on which AEDPA was signed into law.  *See Burns v. Morton*, 134 F.3d 109, 111 (3d Cir. 1998).  Consequently, the one-year statute of limitations to file a federal habeas petition could not have begun at any time prior to April 24, 1996.

In the instant case, Oliver filed a direct appeal following the trial court's imposition of his sentence on January 26, 1995, and the Pennsylvania Superior Court affirmed the judgment of sentence on April 3, 1996.  In his Petition, Oliver asserts that he filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which he alleges was denied in June of 1996.  (*See* Doc. 1 at 1.)  Respondents represent that there is no record of this filing by Oliver to the Pennsylvania Supreme Court, and this Court also was not able to find a record of any such petition through its independent research.[3]  (*See* Doc. 11 at 3-4.)  Nevertheless, as observed by Respondents, and as demonstrated by the following analysis, whether Oliver filed a petition for allowance

---

[3]*See* Pennsylvania's Unified Judicial System Webportal, Appellate Courts Docket Sheets, available at http://ujsportal.pacourts.us/docketsheets/appellate.aspx

of appeal with the Pennsylvania Supreme Court or not, the instant Petition is untimely under § 2244(d)(1)(A).  (*See id.* at 4-5.)

We first analyze the scenario that appears most likely from the record.  When the Superior Court affirmed Oliver's judgment of sentence on April 3, 1996, he would have had thirty (30) days to file a petition for allowance of appeal with the Pennsylvania Supreme Court.  *See* Pa. R. App. P. 1113(a) (providing a petition for allowance of appeal from a final order of the Superior Court shall be filed within 30 days after entry of the order).  There is no record that Oliver filed any such petition. Thus, his judgment of sentence became final on May 3, 1996, and he would have had one (1) year from that date, or until May 5, 1997[4], to file a habeas petition with this Court.

In the alternative scenario, accepting as true Oliver's claim that he filed a petition for allowance of appeal with the Pennsylvania Supreme Court that was denied in June of 1996, his judgment of sentence would have become final ninety (90) days thereafter, or in September of 1996, after the expiration of the time period during which he could have filed a petition for writ of certiorari with the United States supreme Court.  *See* U.S. Supreme Court Rule 13; *Kapral v. United States*, 166 F.3d

---

[4] One (1) year from May 3, 1996 is May 3, 1997; however, because May 3, 1997 was a Saturday, the statute of limitations would not have expired until Monday, May 5, 1997. *See* Fed. R. Civ. P. 6(a)(1)(C).

565, 570-71 (3d Cir. 1999). Thereafter, Oliver would have had one year, or until September of 1997, to file a habeas petition with this Court.

Under either of the foregoing scenarios, the instant Petition, filed on July 26, 2012, is untimely under § 2244(d)(1)(A). However, we also shall consider the applicability of the alternative start dates for the statute of limitations set forth in § 2244(d)(1)(B), (C), and (D) as follows:

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(B), (C), and (D).

With respect to § 2244(d)(1)(B), Oliver has not shown that he suffered any impediment to filing the instant Petition. He makes fanciful claims both in his Petition and Reply about "government interference"; however, he has not offered any proof in support of his claims. In particular, in his Reply, Oliver alleges that, the President of the United States at the time of his trial, President Clinton, used

"executive privilege" to purposely set January 1, 1995 as the cut-off date in determining eligibility for DNA testing in Pennsylvania's statute, § 9543.1(a)(2), in order to prevent Oliver from obtaining DNA testing, and to "stonewall the federal courts and the state courts as well from allowing justice to be done for Oliver and the public." (*See* Doc. 15 at 1.)  In his Petition, Oliver alleges that then First Lady Hillary Rodham Clinton attended his trial, talked to the jury in the presence of the trial judge, and "bullied" her way into the trial judge's chambers to control an *in camera* hearing. (*See* Doc. 1 at 4.)  Apart from the fact that Oliver's claims about the Clintons' interference with his case are completely unsubstantiated, he asserts that this alleged government interference delayed his trial, not his filing of the instant Petition, and thus § 2244(d)(1)(B) has no application in determining the start date of the statute of limitations here.

Turning then to § 2244(d)(1)(C), Oliver does not argue that his claims are based on a new constitutional right recognized by the United States Supreme Court and made retroactive to cases on collateral review, and thus, § 2244(d)(1)(C) is inapplicable here.

With respect to § 2244(d)(1)(D), the applicability of this section depends upon the date on which the "factual predicate" for the "new evidence", namely the DNA evidence that Oliver sought to have tested, was known to him.  *See Sistrunk v. Rozum*,

674 F.3d 181, 188 (3d Cir. 2012) (holding where petitioner knew of facts underlying "new"evidence at time of preliminary hearing, which was years before the filing of his habeas corpus petition, § 2244(d)(1)(D) was inapplicable to allow for a later start of the statute of limitations).  As noted by the Superior Court in its opinion affirming the trial court's denial of Oliver's motion requesting DNA testing, the "factual predicate" on which Oliver relied in support of his request was the trial testimony of investigators that the victim was found holding a black hair and possibly had some "probative evidence under his nails" consistent with having defended himself.  (*See* Doc. 11-1 at 4.)  The date on which Oliver would have known of this factual predicate would have been the date on which the testimony was offered during his trial in January 1995.  Moreover, as observed by the Superior Court in affirming the denial of Oliver's request for DNA testing, Oliver conceded that DNA testing existed at the time of his trial, that his trial commenced and that the verdict was rendered after January 1, 1995, and that the trial court never refused funds for the testing.  (See *id.* At 6-7.)  He therefore cannot claim that he became aware of DNA testing on some date subsequent to his trial, and that the statute of limitations should begin to run on that date.  Therefore, § 2244(d)(1)(D) is inapplicable, and, unless statutory or equitable tolling applies, the instant Petition is untimely.  We now turn to an analysis of statutory and equitable tolling principles.

11

### A. Statutory Tolling

Section 2244(d)(2) tolls the statute of limitations with respect to the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). However, the state court petition must be filed *before* the limitations period runs out; otherwise, there is no time period remaining to be tolled. *See Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001) ("'properly filed' state-court [post-conviction] petitions must be 'pending' in order to toll the limitations period. Thus, a state court petition like Tinker's that is filed following the expiration of the federal [AEDPA] limitations period cannot toll that period because there is no period remaining to be tolled.") (some internal quotations omitted), *reh'g and reh'g en banc denied*, 272 F.3d 1123 (11th Cir. 2001). In this case, based upon our analysis, *supra*, the federal limitations period expired either in May 1997 or September 1997. Accordingly, the Motion for Post-Conviction DNA Testing filed by Oliver with the trial court on May 26, 2010, long after the expiration of the federal limitations period, failed to toll the federal statute.

### B. Equitable Tolling

In *Holland v. Florida*,- - - U.S. - - - -, - - - -, 130 S. Ct. 2549, 2560 (2010), the United States Supreme Court held that § 2244(d) is subject to equitable tolling in

12

appropriate cases. The Court explained that "a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, **and** (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (emphasis added). As recently acknowledged by the United States Court of Appeals for the Third Circuit, "[t]his conjunctive standard requires showing *both* elements before a federal court will permit tolling." *Sistrunk*, *supra*, 674 F.3d at 190 (citing *Schlueter v. Varner*, 384 F.3d 69, 78 (3d Cir. 2004)).

In the instant case, where Oliver conceded that DNA testing existed at the time of his trial, and that the trial court never refused a request for DNA testing, yet Oliver filed his Motion for Post-Conviction DNA testing on May 26, 2010, over fifteen (15) years after his conviction, he has not demonstrated that he pursued his rights diligently. Further, as discussed *supra*, while Oliver claims that there was "government interference" in his case (*see* Doc. 1 at 3), his claim is that the alleged interference delayed his trial, rather than his filing of the instant Petition, and therefore, he also has not demonstrated that some extraordinary circumstance stood in the way of his filing a habeas corpus petition. Finally, as suggested by Respondents, Oliver is not entitled to equitable tolling on the separate ground that he is introducing evidence of "actual innocence" because he cannot show that he is, in fact, innocent.

13

(*See* Doc. 11 at 11-12 (citing *Sistrunk*, 674 F.3d at 191).)  The *Sistrunk* Court determined that "[p]roving actual innocence based on new evidence requires the petitioner to demonstrate (1) new evidence, (2) that is reliable and (3) so probative of innocence that no reasonable juror would have convicted the petitioner."  *Sistrunk*, 674 F.3d at 191 (citing *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *House v. Bell*, 547 U.S. 518, 536-37 (2006)).  We find that Oliver has not demonstrated that the evidence upon which he seeks to rely is "new," and notwithstanding its reliability, as observed by the trial court, where "there was other evidence of the defendant's guilt, including a confession" (*see* Doc. 11-1 at 9), the absence of evidence of Oliver's own DNA would not be so probative of innocence that no reasonable juror would have convicted Oliver.  *See id.*  We therefore conclude that Oliver also is not entitled to equitable tolling on the basis of actual innocence.

## III.    CONCLUSION

For the foregoing reasons, we shall dismiss the Petition as time-barred by the statute of limitations under 28 U.S.C. § 2244(d).  We also will deny a certificate of appealability based on the reasoning in this Memorandum.  However, Oliver is advised that he has the right for thirty (30) days to appeal our order denying his petition, *see* 28 U.S.C. § 2253(a); Fed. R. App. P. 4(a)(1)(A), and that our denial of a certificate of appealability does not prevent him from doing so, as long as he also

seeks, and obtains, a certificate of appealability from the court of appeals. *See* Fed. R. App. P. 22. An appropriate Order will enter.